Good morning, Your Honors. May it please the Court, I represent Ms. Van Pool. The context of this case takes it a bit out of the abstract and the legalism with Ms. Van Pool having been a 19-year-old girl with no prior record, now serving a life sentence for what I would respectfully suggest is relatively, I won't say benign, but relatively unserious conduct in relation to what sentence she's serving. The sentence she's serving is an outgrowth of errors by her counsel and what I would refer as steamrolling behavior by the prosecution. In vouching for Eric Thomas' testimony, the prosecutor basically interposed himself as the arbiter of truth. And when he asked Eric Thomas, what do you think is going to happen if I think you're lying, Mr. Thomas says, are you going to put me in jail? I don't understand how that's vouching. I beg your pardon, Your Honor? I don't understand how that's vouching. Well, it's vouching. Vouching is suggesting that the prosecutor has some extra record knowledge of the facts that allows him or her to have a better gauge of whether the witness is being truthful than the jury does. And here the jury knew that Mr. Thomas had given a prior statement, right, back in the, I can't remember what the... I think it was in December. It was in December. It's vouching because of the logical corollary. The corollary is if I think you're lying, I'm going to put you in jail. And I'm not putting you in jail. Therefore, I don't think you're lying. Even if we were to assume, however, though it was vouching, really the law recognizes a problem when there's impermissible vouching. So where's the impermissibility of the vouching? Well, the impermissibility, Your Honor, is that in the way that Mr. Markson, the prosecutor, carried himself by talking about I did or did not cut a deal. I determined he's a lightweight. I'm the one who decides whether you're lying. What he's doing is he's putting the imprimatur of the government on Mr. Thomas's testimony. And it's a fine, it could be a fine line. In this case, I think he went over the line in a substantial way. And part of the dynamic here is that the conduct was wrapped up in the way he was conducting himself with the other witnesses as well. This was his trial. He was asking the civilian witnesses, are you afraid? When there was no good faith belief to believe they were afraid, this was all a dynamic. And the dynamic is that I know what's good for you. I'm the one to decide whether you're lying. I'm the one to decide whether you're a lightweight. And I'm the one that calls you a gang expert. And I'm the one that is deciding what's right and wrong in this case. I guess I read the record as, I hear what you're saying, and that's maybe one way to read the record. But I thought the record could be read as suggesting that Mr. Thomas was essentially locked into his earlier statement, which the jury heard about. I don't know if it was taped or whatnot. But they heard about this earlier statement. He may well have lied in that statement. And I would have thought, if anything, the defense lawyers had a field day attacking his credibility by saying, look, this prosecutor is holding this prior statement over your head, and you're now not free to tell the truth because, you know, he's saying I'm going to be the judge of whether you're lying. Well, we're here partly because the defense lawyers didn't do a good job. I mean, it wasn't an issue that got certified for appeal. But, I mean, one of the things that the defense lawyer failed to do was even once argue anything about the carjacking or even defend the carjacking. And he failed to object on the vouching. And he didn't have a field day.  So, I mean, the prophylactic to prosecutorial misconduct on a legal, from a legal perspective can't be that the defense lawyer should do a good job. Because if he doesn't, you get a conviction. And you get a conviction largely based in terms of the gang evidence, for sure, on Eric Thomas's testimony. And Eric Thomas was cloaked in the prosecutor's statements, the way he carried himself, the way you read this, the prosecutor saying Eric Thomas is the guy. He's a gang expert. He's a lightweight. You should believe him. So, when he's talking about Ms. Van Poole, again, he doesn't say Ms. Van Poole had sex to get into the gang or had to fight to get into the gang. But he's saying every woman would have to. So he's, in effect, saying that. So what you have occurring, I would suggest respectfully, is that the prosecutor is controlling the case. He's lending this air of knowing more, knowing what's right. He's the one deciding whether someone is lying or not. And the fact that Thomas is --. Kagan. But isn't there, I mean, isn't that the case in every prosecution, that the prosecutor is going to present witnesses, or any case where you're putting up a witness and you want the jury to believe your witness more than the other witnesses. But when he brought in the questioning, he's really talking about for the plea bargain, not for the plea agreement, not that he's going to determine his truthfulness for purposes of taking that away from the jury.  He doesn't say what happens if you're lying or what happens if you're untruthful. And that's a big difference because we all have rules to follow. And prosecutors shouldn't be running roughshod by asking questions they know there's no good faith belief to ask when they're asking witnesses if they've been testified. They shouldn't be saying, what happens if I decide you're lying? In effect, doing that, he's telling the jury, I don't think he's lying. He's looking at the jury at the same time saying, I don't think he's lying. And we do have a bit of a dog and pony show because, yes, he is locked into the prior testimony. He says on the stand that he wasn't being, he wasn't giving all the information that he knew. And nonetheless, the prosecutor is saying it's all good. The jury knows that he's not abiding by the videotape and the prosecutor is still saying, hey, you know, it's all good. And that cumulatively amounts to vouching. I think the prosecutor, if I remember, argued in closing, or acknowledged in closing, that he may have lied about some things, but just don't throw out the entirety of his testimony. In a way, that makes it worse because what he's saying there is, I'm picking the lies you should believe, I'm picking what you should believe. But, again, he's not suggesting that he has some extra record knowledge about whether this is, in fact, the truth. All he's judging it against is the prior statement that the jury heard for themselves. But it doesn't just have to be the extra record knowledge. It can also be the imprimatur of the government's authority. And that's one of the components as far as vouching. It doesn't have to be also extra record. But I think, I do believe that it smacks of that. But the way the plea agreement was introduced is the prosecutor said, you gave a prior statement in December, right? And the guy says yes. And he says, the prosecutor says to him, and on the basis of your representation to me that that was a truthful statement, I cut you this deal, right? And the guy says yes. So the jury has in its mind, okay, this guy, whatever the truthfulness of that first statement was, this guy is now locked into it because the prosecutor is telling him, if you vary from that, I'm going to revoke the plea deal. Well, I think that alone was improper. And that's not an issue we have before us right now. But to be locked into testimony by California law is not correct. Has the U.S. Supreme Court yet said that those kinds of plea agreements violate the new process? I'm not suggesting that's an issue right now. But it was an issue earlier. And I would like to at least keep one minute. But in any event, what I would suggest is that when he is saying, I'm the one to decide whether you're lying, that's, A, the imprimatur of the government. And it does suggest that he has other information. Thank you, counsel. May it please the Court, good morning. I'm Kevin Vienna. I'm a California Deputy Attorney General here representing the respondent and appellee in this matter. We believe, I think as you can see from our brief, that the magistrate judge did a very nice job in the report and recommendation and covered all of the legal issues. I would note that I think the argument about the plea agreement being turned into vouching is not quite the issue that was presented in the district court. The issue there was that the plea agreement itself was improper. But there is nothing left of that agreement in an AEDPA case because the Supreme Court has not spoken on it. Beyond that, in some ways, the prosecutor had no choice but to go over all of that plea agreement with Eric Thomas. And that is because the defense wanted it. It was terribly impeaching, as was much of the other evidence against Mr. Thomas. And, well, and in the end, the prosecutor didn't ask the jury to rely solely or principally on Eric Thomas or any witness. He acknowledged in his argument that there was difficulty with each witness who testified in his case, as there would be or as there often is in gang cases, and as would particularly be present in the case where we have an altercation between two groups of gang members or gang-related members. On the issue of the gang, what about counsel's argument was about Eric Thomas's testimony about how women become members of the gang or being part of the gang? What about that argument? I think, again, the district court was exactly right on this issue, and that is in the first place the state had charged, had alleged that Ms. Van Poole was or committed her crimes for the benefit of the Raymond Street gang. It was obviously relevant then to show her connections to the gang, and it would be relevant, it was relevant for him to express an opinion that she either was or was very close to a gang member. But what possible relevance could his testimony about how women in general get initiated into a gang have for this jury? Well, there was other evidence that connected it to that. That is that he presented evidence that she was a fighter and also presented evidence that several years ago, for a long time, at the time when she was very young, she was the girlfriend of a Raymond gang member. Now, I'm not going to argue that that's a strong connection between those two things, but it is a relevant connection. He has no knowledge of whether she slept with her boyfriend in order to get initiated into the gang, and that's the impression that he left with the jury. I'm not sure that's the impression that he left with the jury. I mean, he never said that about her. He didn't know. That's what I'm saying. I don't even understand how the judge could possibly have allowed that testimony in, doing a prejudicial... It showed her connection to the gang. Well, I guess what's troubling is that he stated this sort of as a general basis, okay, and then if he had specific knowledge about connecting up the defendant, Ms. Van Poole, to those specific acts, but the real argument here is that he left the impression that she did one or both of those things when he didn't have any personal knowledge. Now, generally, you know, somebody with experience in the field could talk about the generalities, but it is so prejudicial that you think the probative values outweighed at that point. I would say that I don't agree that this testimony was so prejudicial. I mean, as the district court said in the report and recommendation, Ms. Van Poole was accused of or was demonstrated to be closely associated with the gang representatives. She was with them at the beginning at Mel's Liquor in the morning and appeared to have engaged in fighting at that instance. And then in the third fight, she's accused, witnesses say that she is stabbing Vincent Thomas, the victim. So to suggest that she was not chased doesn't seem to me to be terribly prejudicial to her case in any way. I mean, I seriously doubt that anyone thought she was chased. But I mean, I hear what you're saying. She's accused of these terrible things, so, you know, what's this other inference? But circumstantially, they could hear the testimony specific as to her and determine whether or not she was part of the gang or doing any activities that would benefit the gang. I agree that that's relevant to the charge. But I guess in particular, counsel is complaining about the testimony just in general, which is pretty inflammatory about how, you know, women get inducted into the gangs. There's none of that that supports that she did any of those things. I think there is evidence that she was a fighter, which connects it to part of it. And there is evidence that she was the long-time girlfriend of a gang member. So there is a permissible inference that can be drawn from that testimony. It's not, as I admitted, I don't think it's terribly powerful. I don't think it's terribly connective. Eric Thomas didn't say specifically that she had done that. But it is a permissible inference as the prosecutor seeks to show that she was connected to the gang closely, arguably a gang member, and consequently committed these crimes for the benefit of her street gang. The court didn't really have other questions for my opponent this morning. And as I said, I think our briefing in the district court covered that. I'm about four minutes short. But unless the court has other questions, I'm prepared to submit. Thank you. Thank you, Your Honor. You had a minute for rebuttal. Ten minutes goes fast. One minute, 12 seconds. Thank you, Your Honor. The question at hand that just arose is not whether she was chased or not. The question is whether she had to sleep in to a gang. And those are two very different things, I would suggest. And counsel for respondent has stated that the Supreme Court has not spoken to certain issues. I think the Supreme Court has spoken to all these issues in Berger and Smith v. Phillips. I mean, the fact is that prosecutors have to conduct themselves in a fair way. And the law shouldn't put itself in a position where prosecutors can have a checklist as to what they can do and not do based on whether the case in the Supreme Court involves someone wearing a blue suit or not. I mean, the fact is prosecutors have to conduct themselves in a fair way. And that's what we're talking about in all of these arguments that we have. And on that note, I'll conclude. Thank you very much. Thank you, counsel. We appreciate all the arguments this morning. Thank you. Safe travels back to San Diego.
judges: Kobayashi, Paez, Watford